UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARITA MILLER,

              Plaintiff,

                                       Case No. 23-10563

v.                               U.S. DISTRICT COURT JUDGE

                                       GERSHWIN A. DRAIN

CITIZENS BANK, N.A.,

              Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT CITIZENS BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT [#35] AND DISMISSING COUNT II WITH PREJUDICE

## I.    INTRODUCTION

Presently before the Court is Defendant Citizens Bank, N.A.'s ("Citizens") Motion for Summary Judgment. This matter is fully briefed. Upon review of the parties' submissions, the Court concludes that oral argument will not aid in the disposition of this matter. Accordingly, the Court will resolve Citizens' Motion for Summary Judgment on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, Citizens' Motion for Summary Judgment is DENIED. The Court also dismisses Count II of Plaintiff Charita Miller's Second Amended Complaint with prejudice.

## II.  <u>BACKGROUND</u>

This is a race discrimination case. In early 2023, Plaintiff, an African American woman, received a check from her former employer as part of a confidential lawsuit settlement. Plaintiff visited Citizens' Warren Woodmont branch on February 24, 2023 to deposit the check in her checking account. Plaintiff first established a banking relationship with Citizens in April 2021, when she opened a checking account and a savings account. Following an unresolved overdraft issue, however, Citizens closed Plaintiff's checking account on November 30, 2022.

Upon arriving at the bank, Plaintiff was helped by Hussein Darwiche, a banker at the branch. Mr. Darwiche informed Plaintiff that her checking account had been closed and assisted her with opening a new one. Mr. Darwiche then instructed Plaintiff to deposit the check into an ATM at the branch.

Unbeknownst to Plaintiff at the time she made the deposit, the ATM's automated processes flagged the check as potentially fraudulent. This prompted Citizens to delay the availability of the entire deposit until March 6, 2023, six business days after Plaintiff deposited the check. Citizens informed Plaintiff of this delay in a notice dated February 27, 2023, stating that the reason for the delay was Citizens' belief that the check "will not be paid" because "[s]ome of the information on the check is not consistent with other information on the check." ECF No. 36-5.

Plaintiff's check was subsequently reviewed by Citizens' fraud team, which

is located in Pittsburgh, Pennsylvania. The fraud team is responsible for investigating potentially fraudulent checks, as well as imposing and lifting deposit holds on such checks. The fraud team emailed Plaintiff's former employer on March 3, 2023 in an effort to verify the check's validity, and this email went unanswered.

Plaintiff was still unable to access her deposited funds on March 6, 2023. The Citizens' mobile app directed her to visit a branch for further assistance. She returned to the Warren Woodmont branch and was again assisted by Mr. Darwiche. As a bank teller, Mr. Darwiche lacks the authority to lift or resolve holds imposed by the fraud team. Nevertheless, Mr. Darwiche asked Plaintiff a series of questions about the origin and purpose of the check. Plaintiff explained that she received the check in connection to a lawsuit settlement and that she could not provide any further information due to its confidential nature. Mr. Darwiche asked if he could call Plaintiff's former employer to verify the check, and Plaintiff urged him not to do so out of concern that doing so would breach the settlement's confidentiality.

Mr. Darwiche then informed Plaintiff that he needed additional information to verify the validity of the check. Plaintiff made several trips home to gather supporting materials, ultimately presenting the settlement agreement and her lawyer's closing letter to Mr. Darwiche. These documents contained Plaintiff's name, her former employer's name, and the settlement amount. They also discussed the nature of the lawsuit. Mr. Darwiche also spoke to Plaintiff's lawyer, who

vouched for the authenticity of the check and the supporting documents. At all times, however, Mr. Darwiche lacked authority to lift the hold.

At some point during their interaction, Mr. Darwiche contacted the fraud team. He was advised that the hold had been extended for 90 days from the date of Plaintiff's deposit, as the fraud team was waiting for third-party verification of the check. He relayed this information to Plaintiff. While still assisting Plaintiff, Mr. Darwiche called over and began helping another customer. Plaintiff's social security card, confidential settlement agreement, and closing letter were visible when this customer approached Mr. Darwiche's desk.

Plaintiff also spoke to another Citizens employee, whom Plaintiff believed to be a manager. While assisting Plaintiff, this employee remained focused on a phone call unrelated to Plaintiff's case. The employee ultimately reiterated to Plaintiff that her check was not being deposited because the bank believed Plaintiff's check was fraudulent and there was nothing branch employees could do to lift the hold.

Plaintiff ultimately left the Warren Woodmont branch. As she walked through the parking lot, a Citizens security guard approached Plaintiff. The security guard remarked that she had never seen a customer treated the way Plaintiff had been and added, "Arab people come in here all the time and withdraw large amounts of money and are never given any sort of trouble." ECF No. 36-1, PageID.477.

That same day, Citizens sent Plaintiff a written notice confirming that it was

extending the hold on her deposit by ninety days from the date of the original deposit. Its justification for this extension was identical to that given in the first notice: "[s]ome of the information on the check is not consistent with other information on the check." ECF No. 36-8, PageID.539. Plaintiff proceeded to call Citizens' customer service line and provided a customer service representative with her former employer's phone number. Citizens' fraud team called Plaintiff's former employer on March 7, 2023 and verified the check's authenticity. At that point, Citizens released the hold and made the funds available to Plaintiff. Plaintiff withdrew most of the funds on March 11, 2023, and closed the account a few months later.

Plaintiff complained to Citizens that she believed the deposit hold was discriminatory. Citizens' Office of the Chairman sent Plaintiff a letter addressing this claim on March 21, 2023, stating, for the first time, that "[t]he hold was placed [because] the paying bank did not verify funds." ECF No. 36-3, PageID.500. It also indicated that the Personal Deposit Account Agreement between Citizens and Plaintiff sets forth the bank's guidelines for imposing such holds.

Plaintiff initiated this lawsuit against Citizens on March 9, 2023. Her Second Amended Complaint alleges the following causes of action: (1) race discrimination in the enforcement of a contract in violation of 42 U.S.C. § 1981 (Count I); (2) common law and statutory conversion in violation of MICH. COMP. LAWS § 600.2919a (Count II); and (3) race discrimination in violation of Michigan's Elliot-

Larsen Civil Rights Act, MICH. COMP. LAWS § 37.2302(a) (Count III). Citizens filed the Motion for Summary Judgment that is presently before the Court on January 23, 2025. In support of this motion, Citizens filed affidavits by: (1) Mr. Darwiche; (2) Stephanie Scarpelli, a litigation paralegal at Citizens who is familiar with business records relating to this case; (3) Riham Bazzi, a former branch manager at Citizens' Warren Woodmont branch; and (4) Dalia Sukari, a banker at Citizens' Warren Woodmont branch. Plaintiff filed a Response on February 12, 2025. In addition to responding to Citizens' arguments, Plaintiff claims the affidavits must be stricken from the record. Citizens filed a Reply on February 26, 2025.

### III.   <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if its resolution will affect the outcome of the lawsuit." *Martingale LLC v. City of Louisville*, 361 F.3d 297, 301 (6th Cir. 2004). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The court must view the facts,

and draw reasonable inferences from those facts, in the light most favorable to the nonmoving party. *Id.* at 255.

## IV.  <u>ANALYSIS</u>

### a. **Citizens' Affidavits**

Plaintiff contends that the affidavits attached to Citizens' Motion for Summary Judgment should be stricken because (1) Citizens did not produce them during discovery, (2) the affiants were not identified in Citizens' initial disclosures, (3) Citizens served its discovery responses after discovery ended and thus the affiants' identities "were a complete mystery to Plaintiff throughout the entire course of discovery," and (4) Citizens did not file a witness list. ECF No. 36, PageID.430. The legal foundation for this request, however, is unclear. Federal Rule of Civil Procedure 12(f), which governs motions to strike, provides that "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). This rule, however, does not apply here, as exhibits attached to a dispositive motion are not "pleadings" within the meaning of the rule. *See Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 375 (6th Cir. 2006).

To the extent Plaintiff's request rests upon Federal Rules of Civil Procedure 26 and 37, Rule 26(a) provides that "a party must provide to the other parties and promptly file . . . the name and, if not previously provided, the address and telephone number of each witness—separately identifying those the party expects to present

and those it may call if the need arises." Fed. R. Civ. P. 26(a)(3). Litigants have a continuing duty to supplement and correct their Rule 26(a) disclosures. Fed. R. Civ. P. 26(e). A litigant's failure to timely identify a witness in accordance with this rule bars them from using the "witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c).

Here, the Court finds that Citizens' failure to timely disclose the identities of Mr. Darwiche, Ms. Sukari, and Ms. Scarpelli was harmless. Plaintiff interacted with Mr. Darwiche and Ms. Sukari at Citizens' Warren Woodmont branch on March 6 and thus had reason to know Citizens may call them as witnesses, even if she did not know their specific identities. Indeed, Plaintiff's witness list contains  unspecified Citizens' service employees as potential witnesses, including "Service Employee 'Nichole,'" "Service Employee 'Hassan,'" and "Service Employee 'Lori.'" *See* ECF No. 26, PageID.149. Furthermore, Plaintiff knew Mr. Darwiche's name at her deposition, which occurred prior to the close of discovery. *See* ECF No. 36-1. As for Ms. Scarpelli, her affidavit largely summarizes business records pertaining to Plaintiff's banking history with Citizens, including the circumstances surrounding the deposit hold. This information should not come as a surprise to Plaintiff, as it pertains to her own banking activities. Copies of these business records are attached to Ms. Scarpelli's affidavit. Lastly, the information contained in Mr. Darwiche's,

Ms. Sukari's, and Ms. Scarpelli's affidavits does not prejudice Plaintiff. Instead, it tends to substantiate Plaintiff's race discrimination claims. As such, the Court finds that Citizens' failure to timely identify these affiants was harmless, and the Court will consider their affidavits in adjudicating the present Motion for Summary Judgment.

As for Ms. Bazzi, however, her affidavit states that she does "not have any personal knowledge of . . . the plaintiff in this case, Charita Miller." ECF No. 35-5, PageID.368. As such, her affidavit is not particularly useful in assessing Plaintiff's claims. Furthermore, portions of Ms. Bazzi's affidavit contradict her deposition testimony. The Sixth Circuit has recognized that "a party cannot create a genuine issue of material fact by filing an affidavit . . . that essentially contradicts [her] earlier deposition testimony." *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997). For these reasons, the Court will not consider Ms. Bazzi's affidavit in adjudicating Citizens' Motion for Summary Judgment.

### b. Plaintiff's Race Discrimination Claims (Counts I and III)

Citizens seeks summary judgment on Plaintiff's race discrimination claims, which she brings pursuant to 42 U.S.C. § 1981 and Michigan's Elliott-Larsen Civil Rights Act ("MELCRA"). Under Section 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The term "make and enforce

contracts includes "the enjoyment of all benefits, privileges, terms, and conditions of [a] contractual relationship." *Id.* § 1981(b). Furthermore, MELCRA makes it illegal to "[d]eny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, sexual orientation, gender identity or expression, or marital status." MICH. COMP. LAWS § 37.2302(a). As the Sixth Circuit has recognized, "[a] common framework unites the two laws." *Branscumb v. Horizon Bank*, No. 24-1357, 2025 WL 48106, at *3 (6th Cir. Jan. 8, 2025). Both laws require a plaintiff "to establish that race is a 'but-for' cause of the injury." *Gray v. AutoZoners, LLC*, No. 22-1069, 2022 WL 16942609, at *3 (6th Cir. Nov. 15, 2022) (per curiam) (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 329-30 (2020); *Hecht v. Nat'l Heritage Acads., Inc.*, 886 N.W.2d 135, 146 (Mich. 2016)). But-for causation can be established by "direct evidence or circumstantial evidence." *Id.* (citations omitted).

Plaintiff relies on circumstantial evidence to prove her race discrimination claims. In such instances, "the *McDonnell Douglas* burden-shifting framework applies." *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771-72 (6th Cir. 2018) (citation omitted); *see also Branscumb*, 2025 WL 48106, at *3. Under this framework, the plaintiff must first make out a prima facie case of race

discrimination. *Rogers*, 897 F.3d at 772. If the plaintiff makes this showing, the burden then shifts to the defendant "to proffer a legitimate, nondiscriminatory . . . reason for" its conduct. *Id.* (citation omitted). Upon making this showing, the burden shifts back to the plaintiff to "prove by a preponderance of the evidence that the reasons offered by the employer were pretextual." *Id.* (citation omitted). The Court will discuss these steps in turn.

### 1. Plaintiff's Prima Facie Showing

To make her prima facie showing, Plaintiff must demonstrate (1) she "is a member of a protected class," (2) she "made herself available to receive and pay for" Citizens' services, and (3) she "did not enjoy the privileges and benefits" of these services due to circumstances that "rationally support an inference of unlawful discrimination." *Branscumb*, 2025 WL 48106, at *3 (quoting *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 871 (6th Cir. 2001)). Plaintiff's burden of establishing her prima facie case is "not an onerous one," and instead is "a burden easily met." *See Jackson v. Trinity Health-Michigan*, 656 F. App'x 208, 218 (6th Cir. 2016) (citations omitted).

As for the first element, there is no dispute that Plaintiff, an African American woman, is a member of a protected class. There is also no dispute that Plaintiff satisfies the second element, as she sought to enforce contractual services from Citizens. Instead, this case centers around the third element—that is, whether

Plaintiff was deprived of the privileges and benefits of Citizens' services due to circumstances that rationally support an inference of unlawful discrimination. There are two ways Plaintiff can establish this inference. *Id.* (citing *Keck v. Graham Hotel Sys., Inc.*, 566 F.3d 634, 640-41 (6th Cir. 2009)). The first "turns on whether the bank failed to provide her services available to 'similarly situated persons outside the protected class.'" *Branscumb*, 2025 WL 48106, at *3 (quoting *Christian*, 252 F.3d at 871). The second "turns on whether, even if she did receive the relevant services, the bank provided them in a 'markedly hostile manner' that a 'reasonable person would find objectively discriminatory.'" *Id.* (quoting *Christian*, 252 F.3d at 872).

Plaintiff relies only on the second avenue here. In determining whether a defendant's conduct rose to the level of being "markedly hostile," courts consider whether the conduct was (1) so far outside of widely accepted business norms, (2) so arbitrary on its face, and (3) so profoundly contrary to the manifest financial interests of the merchant, such that the conduct supports a rational inference of discrimination. *Id.* (citing *Christian*, 252 F.3d at 871).

First, Mr. Darwiche's conduct on March 6, 2023 was arbitrary on its face. As a banker at Citizens' Warren Woodmont branch, he lacked the authority to release the hold on Plaintiff's check. Instead, this power rested solely with the fraud team. Nevertheless, Mr. Darwiche questioned Plaintiff about the origin and purpose of the

check, requested supporting documentation, and even suggested calling Plaintiff's former employer to verify the check's validity. While Mr. Darwiche communicated with the fraud team that day, there is no evidence suggesting he conveyed any of this information to them. Instead, these communications appear limited to merely inquiring into the status of the deposit hold. Thus, Mr. Darwiche's conduct served no legitimate purpose and was beyond the scope of his job responsibilities.

Second, Citizens' imposition of the 90-day hold on Plaintiff's check was arbitrary and departed significantly from widely accepted business norms. Federal regulations permit banks to delay availability of deposited funds for a "reasonable period of time" in certain instances, including where the customer deposits checks "in excess of $5,525 on any one banking[] day," the customer's account has been "repeatedly overdrawn" in the last six months, and the bank has "reasonable cause to believe that the check is uncollectible from the paying bank." 12 C.F.R. § 229.13. A "reasonable period of time" generally means up to five business days for "local checks" and up to six business days for "nonlocal checks." *Id.* § 229.13(h)(4). Notwithstanding, a bank may delay the availability of funds for a longer period of time, but it has the burden of establishing the reasonableness of the delay. *Id.* Federal regulations also require the bank to promptly provide the customer with written notice specifying the reason for the delay. *Id.* § 229.13(g).

Here, the 90-day hold far exceeded the delays contemplated by federal

regulations. Citizens has offered no explanation as to why such an extraordinary delay was necessary or reasonable. Indeed, the justification provided to Plaintiff in the written notice informing her of the 90-day delay was identical to the justification supporting the initial six-day hold: Citizens believed the check would not be paid because "[s]ome of the information on the check is not consistent with other information on the check." ECF No. 36-5, PageID.505; ECF No. 36-8, PageID.539. It offered no additional explanation as to why it needed 90 days to resolve its suspicion of fraud. It is also worth noting that prior to imposing the 90-day hold, the only effort made by Citizens to verify the check's legitimacy was sending a single email to Plaintiff's former employer. It did not, for instance, contact the issuing bank, nor did it proactively contact Plaintiff for supporting information. In light of this minimal and superficial attempt at verifying the check, a factfinder could reasonably conclude that the imposition of a 90-day hold was unreasonable and thus contrary to federal regulations.

The Court also notes that the 90-day hold far surpassed the delays contemplated by Citizens' own internal policies, which are memorialized in its Personal Deposit Account Agreement with Plaintiff. This Agreement states that a non-Citizens check (i.e., a check written by a customer of a different bank) will generally be available for withdrawal on the business day following the deposit. ECF No. 36-4, PageID.502. In certain circumstances, however, deposited funds "may be

delayed for a longer period of time," including where Citizens believes a check will not be paid. ECF No. 36-4, PageID.503. In such circumstances, the delayed funds "will generally be available no later than the seventh Business Day after the day of [the] deposit," and "the first $200 of these deposits will normally be available on the first Business Day after the day of [the] deposit." *Id.* The 90-day hold was nearly 13 times longer than the delay contemplated in the Personal Deposit Account Agreement, and Citizens made no portion of the deposit available to Plaintiff while it confirmed the check's validity.

The Court acknowledges that Citizens ultimately made the deposited funds available to Plaintiff on March 7, 2025, seven business days following her initial deposit. This fact, however, does not bear on the Court's analysis. The relevant standard evaluates whether, even if Plaintiff *did* receive the services in question, Citizens provided them in a markedly hostile manner. Put differently, the inquiry centers around *how* Citizens provided its services, and the imposition of a 90-day hold, even if ultimately lifted, reasonably suggests Citizens provided Plaintiff with such services in a markedly hostile manner.

Third, there is uncontroverted evidence suggesting that Citizens lacked reason to impose the initial six-day and subsequent 90-day holds. In its first two notices to Plaintiff, Citizens stated that the reason for the hold was its belief that the check will not be paid because "[s]ome of the information on the check is not consistent with

other information on the check." ECF No. 36-5, PageID.505; ECF No. 36-8, PageID.539. However, in the Chairman's March 21, 2023 letter to Plaintiff—which was sent *after* the deposit hold was lifted—Citizens stated, for the first time, that "[t]he hold was placed [because] the paying bank did not verify funds." ECF No. 36-3, PageID.500. This explanation is inconsistent with the record before the Court, which demonstrates that the only effort made by Citizens to confirm the validity of the check was reaching out to Plaintiff's former employer. It is also inconsistent with the justifications Citizens previously provided to Plaintiff. Drawing all inferences in favor of Plaintiff, these inconsistencies reasonably suggest that Citizens lacked reasonable cause to believe the check would not be paid.

In its Motion for Summary Judgment, Citizens claims Plaintiff's check was placed on hold "for numerous reasons," including:

> (1) Plaintiff's account was opened the same day she deposited the check, to wit, February 24, 2023; (2) Plaintiff recently overdrew her checking account and failed to cure the overdraw for months, resulting in her account being closed and charged off; (3) the check was from an out-of-state maker; and (4) the font and layout of the check were questionable and Plaintiff had not previously deposited any comparable checks with which to assess Plaintiff's check.

ECF No. 35, PageID.271. These justifications, however, are not well taken. As to the first, the Court recognizes that, under the Personal Deposit Account Agreement, "special rules" apply to new accounts during the first 27 days the account is open. Because Plaintiff opened her account on the same day she deposited the check, these

rules governed her account at the time she deposited the check and permitted Citizens to place an automatic five-day hold on Plaintiff's check.[1] The holds at issue here, however, were longer than five days. As such, the newness of Plaintiff's account does not justify the initial six-day hold and subsequent 90-day hold.

The remaining justifications are similarly unavailing. Federal regulations require banks to provide timely written notice specifying the reason for a hold when it is based on repeated overdrafts or reasonable doubt as to collectability. 12 C.F.R. § 229.13. Neither of the notices Citizens issued to Plaintiff contain these justifications. If those were indeed its bases for imposing the hold, Citizens' failure to disclose them to Plaintiff in writing contravened federal regulations and departed significantly from well-established banking practices.

Lastly, Citizens' conduct was contrary to its manifest financial interests. Imposing a deposit hold that contravenes federal regulations can result in civil liability. *See* 12 C.F.R. § 229.21. Furthermore, Citizens' conduct ultimately drove Plaintiff to close her account, depriving Citizens of all future profits to be earned from Plaintiff's account. Its treatment of Plaintiff also risked reputational damage to

---

[1] Specifically, the "special rules" provide that "[f]unds from the first $5,525 of a day's total deposits of cashier's, certified, teller's, traveler's, and federal, state and local government checks will be available on the next Business day after the day of your deposit if the deposit meets certain conditions. . . . Funds from all other check deposits *will* be available on the fifth Business Day after the day of your deposit." ECF No. 36-4, PageID.503 (emphasis added).

Citizens, which can have a detrimental financial impact.

Drawing all reasonable inferences in Plaintiff's favor, the Court finds that there is sufficient, uncontroverted evidence demonstrating that Citizens provided Plaintiff with banking services in a "markedly hostile manner." But this alone is not enough. Plaintiff must show that she was treated in a "markedly hostile manner" *and* that a reasonable person would find Citizens' conduct "objectively discriminatory." *Branscumb*, 2025 WL 48106, at *3 (quoting *Christian*, 252 F.3d at 871).

Here, there is evidence reasonably supporting an inference that Citizens' conduct was objectively discriminatory. As Plaintiff left Citizens' Warren Woodmont branch for the final time on March 6, a Citizens security guard remarked that she had never seen a customer treated the way Plaintiff had been and that "Arab people come in here all the time and withdraw large amounts of money and are never given any sort of trouble." ECF No. 36-1, PageID.477. The security guard's statement contrasts Plaintiff's experience as an African American customer with the treatment afforded to members of another racial group who engage in similar transactions without incident. This observation reasonably supports an inference that Plaintiff was treated differently by Citizens on account of her race. Accordingly, the Court concludes there is sufficient, uncontroverted evidence supporting Plaintiff's prima facie case.

2. <u>Remaining *McDonnell Douglas* Steps</u>

After a plaintiff makes her prima facie showing, "the burden shifts to the [defendant] to proffer a legitimate, nondiscriminatory reason for its" conduct. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584 (6th Cir. 2009) (citation omitted). The burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the defendant's justification is pretextual. *Id.* Plaintiff can prove pretext "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *See Back v. Nestle USA, Inc.*, 694 F.3d 571, 579 (6th Cir. 2012) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003)). "At bottom the question is always whether the [defendant] made up its stated reason to conceal intentional discrimination." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009).

Citizens provides no explanation for Mr. Darwiche's conduct. It addresses only the deposit hold on Plaintiff's check, claiming it imposed the hold "for numerous reasons," including:

> (1) Plaintiff's account was opened the same day she deposited the check, to wit, February 24, 2023; (2) Plaintiff recently overdrew her checking account and failed to cure the overdraw for months, resulting in her account being closed and charged off; (3) the check was from an out-of-state maker; and (4) the font and layout of the check were questionable and Plaintiff had not previously deposited any comparable checks with which to assess Plaintiff's check.

ECF No. 35, PageID.271. As discussed above, however, the newness of Plaintiff's account at the time she deposited the check does not justify the initial six-day hold and subsequent 90-day hold. And as to the remaining justifications, Citizens was required by law to provide Plaintiff with written notice explaining why her deposited funds were being held. The notices provided to Plaintiff did not include any of these justifications. A reasonable factfinder could find that these justifications—proffered for the first time during litigation—did not actually motivate the hold and are thus pretextual.

In sum, the Court finds that Citizens has not demonstrated an entitlement to judgment as a matter of law on Plaintiff's race discrimination claims. As such, Citizens is not entitled to summary judgment on Plaintiff's race discrimination claims.

### c. Plaintiff's Conversion Claims (Count II)

Citizens also seeks summary judgment on Plaintiff's common law and statutory conversion claims. In her Response, however, Plaintiff "consents to the dismissal" of these claims. ECF No. 36, PageID.441. Accordingly, Count II is dismissed with prejudice.

## V.  CONCLUSION

Based on the foregoing, Citizens' Motion for Summary Judgment is DENIED. The Court also dismisses Plaintiff's conversion claims (Count II) with prejudice.

SO ORDERED.

Dated: May 15, 2025                          /s/Gershwin A. Drain
                                             GERSHWIN A. DRAIN
                                             United States District Judge

## CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on May
15, 2025, by electronic and/or ordinary mail.
                        /s/ Marlena Williams
                          Case Manager